UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LYLE D. NANCE, | Civil Action No. 17-672 (MCA) |
| Plaintiff, | |
| v. | OPINION |
| PATRICK NOGAN, et al., | |
| Defendants. | |

## I.  INTRODUCTION

This matter has been opened to the Court by Plaintiff's filing of a civil rights complaint and a motion to consolidate this action with Civil Action No. 17-679, which is currently pending in the Camden Vicinage.  (ECF Nos. 1, 1-2.)  The Court previously denied without prejudice Plaintiff's application to proceed *in forma pauperis*.  (ECF No. 2.)  Plaintiff subsequently submitted the filing fee and submitted a letter request asking the Court to reopen this matter. (ECF No. 6)  At this time, the Court will reopen the matter and screen the Complaint for dismissal pursuant to 28 U.S.C. 1915A.  For the reasons explained below, the Court will proceed the Complaint in part, dismiss it in part, and deny without prejudice the motion to consolidate this action with Civil Action No. 17-679.

## II.  FACTUAL BACKGROUND

Plaintiff has sued Gary Lanigan, Commissioner of the New Jersey Department of Corrections, Patrick Nogan, Administrator of East Jersey State Prison ("EJSP"), Guy Cirillo, Assistant Superintendent of EJSP, Ed Koschera, Maintenance Supervisor at EJSP, and Willie Bonds, Administrator at South Woods State Prison ("SWSP") for alleged violations of his civil rights.  (*See* ECF No. 1, Complaint at ¶¶ 3-7.)  Plaintiff's Complaint details his participation as

1

an Inmate Liaison Committee ("ILC") member at EJSP, and his role as an elected Prisoner Representative on his wing. The Complaint also describes the Inmate Remedy System ("IRS") utilized by the New Jersey Department of Corrections, and overseen by NJDOC Commissioner Gary Lanigan. (*Id.* at ¶¶ 11-14.)

Plaintiff alleges that he has written to Defendant Lanigan regarding "systemic problems" with the IRS at EJSP, including prison officials' failure to respond to grievances, the misrouting of grievances, and lost grievances. (*Id.* at ¶ 15.) The Complaint also alleges that Defendant Nogan, as Administrator of EJSP, is charged with ensuring that staff responds to grievances in a timely manner. During his tenure on the ILC as an elected secretary, Plaintiff "actively presented informal complaints and filed formal grievances on behalf of the [inmate] population and for himself" to Defendant Nogan regarding issues at EJSP. Plaintiff alleges that Defendant Nogan routinely failed to respond to the grievances. (*Id.* at ¶¶ 20-21.) Plaintiff's Complaint details numerous grievances directed to EJSP administration, including Defendants Lanigan and Nogan, during 2013 and 2014. (*Id.* at ¶¶ 22-37.) In many instances Defendants Lanigan and Nogan failed to respond or provided an unsatisfactory response. (*Id.*) Defendant Nogan also failed to meet with the ILC on a monthly basis as required by the New Jersey Administrative Code and declined to certify the ILC constitution and bylaws. (*Id.* at ¶¶ 38-40.)

According to the Complaint, Defendant Nogan also "abused his authority by arbitrarily prohibiting Plaintiff from functioning as the ILC secretary during meetings" although Plaintiff was elected to perform this role. The Complaint further alleges that Defendant Nogan began to harass, intimidate, and threaten Plaintiff in retaliation for his filing of grievances, and, on September 9, 2014, Defendant Nogan allegedly told another inmate that if Plaintiff did not stop

2

writing grievances, he would "ship [Plaintiff's] ass out of here."[1] (*Id.* at ¶¶ 42, 44.) Plaintiff states that he told his father about Defendant Nogan's threat in a certified letter dated October 10, 2014. (Id. at ¶ 45.)

Plaintiff's Complaint then describes the events leading up to his alleged retaliatory transfer from EJSP to SWSP, which occurred on March 10, 2015. On February 1, 2015, Plaintiff again notified Defendant Lanigan of the deficiencies in the IRS, but did not receive a response from Defendant Lanigan. (*Id.* at ¶ 46.) On February 12, 2015, Defendant Nogan approved a proposal to allow inmates to elect their wing representatives for the ILC; Plaintiff ran for the position and his ballot was inexplicably printed in Spanish rather than English, but other candidates' ballots were printed in English and Spanish. (*Id.* at ¶ 47.) On February 17, 2015, Plaintiff learned that Inmate Warren was appointed wing representative as a result of a "coin flip" despite the fact that Plaintiff was the certified winner of the election; Defendant Nogan excluded Plaintiff from a meeting of the ILC members and allowed Inmate Warren to attend in Plaintiff's place. (*Id.* at ¶¶ 48-50.) Defendant Nogan gave up his attempt to supplant Plaintiff as an ILC member several days later, but would not permit him to become the ILC secretary. (*Id.* at ¶¶ 51-52.) In response to events at EJSP, Defendant Nogan called a meeting with the ILC members on March 10, 2015, and Plaintiff spoke about several issues in the prison. Later that night, Plaintiff was transferred to SWSP. Plaintiff alleges that his transfer was the result of a

---

[1] Pursuant to provisions of the New Jersey Administrative Code and IRS polices, inmates shall not be subject to punishment or reprisal for the filing of grievances. (*Id.* at ¶¶ 13, 17.)

conspiracy between Defendant Nogan and Defendant Bonds, administrator of SWSP.[2]  (*Id.* at ¶¶ 57, 61.)

Plaintiff alleges that the retaliation continued at SWSP as "a pattern to injure him during his residency at SWSP" and asks that the Court consolidate this action with a "forthcoming civil action concerning his confinement at SWSP[.]"  (*Id.* at ¶ 57.)

In the "Statement of Claims" section of his Complaint, Plaintiff provides additional factual allegations and attempts to set forth the specific civil rights he believes Defendants have violated.

Plaintiff alleges that Defendant Lanigan, as Defendant Nogan's employer, had "notice" that Defendant Nogan was abusing his authority at EJSP, and failed to enforce the IRS policies to prevent retaliation against inmates for exercising their First Amendment rights.  Plaintiff further alleges that Defendant Lanigan was "aware of the structural inequality existing at EJSP against Plaintiff being singled out and treated indifferently due to his race and association amongst others similarly situated, [and] opted not to correct such discriminatory behavior"  (*Id.* at ¶ 59.)  Plaintiff further alleges that Defendant Lanigan "inaction to annul Plaintiff's transfer and unwillingness to apply proper policy directive, sanctioned the activity" and "paved the way" for the alleged violations of Plaintiff's constitutional rights.  (*Id.* at ¶ 60.)  With respect to Defendant Lanigan, the Complaint further alleges that the failure to answer Plaintiff's grievances regarding Defendant Nogan's civil rights violations deprived Plaintiff of due process.  (*Id.*)

The Complaint also reiterates the allegation that Defendant Nogan conspired with Defendant Bonds to "plan, approve, and execute" the surreptitious transfer of Plaintiff from

---

[2] Plaintiff subsequently sent grievances to Defendant Lanigan via certified letter to find out why he was transferred to SWSP; in response, Cindy Ford told Plaintiff to use the IRS, which he had done with no response.  (*Id.* ¶¶ 55-56.)

EJSP to SWSP in order to punish Plaintiff for exercising his constitutional right to file grievances, thus violating the First Amendment. (*Id.* at ¶ 62.)

The Complaint also alleges that Defendant Nogan abused his power and violated the New Jersey Civil Rights Act, the "federal LAD", and provisions of the New Jersey Administrative Code by prohibiting Plaintiff from serving as the IRS secretary without cause and despite his election to that position. (*Id.* at ¶ 63.)

Defendant Nogan also allegedly deprived Plaintiff of his right to graduate from a college program called NJSTEP, and did so despite the fact that he permitted other transferred inmates to return to EJSP to graduate from the program. (*Id.* at ¶ 64.) Plaintiff further alleges that by removing Plaintiff from NJSTEP, Defendant Nogan discouraged Plaintiff's rehabilitation and reintegration into the community in violation of the Fourteenth Amendment, federal LAD, and the NJCRA. (*Id.* at ¶ 65.)

Plaintiff further alleges that Defendant Nogan violated the Eighth Amendment and acted with "deliberate indifference" to Plaintiff's and other inmates' welfare by "ignoring issues in the ILC agenda and their repeated complaints about numerous unsafe conditions on Plaintiff's unit. These issues include unsafe drinking water, condemned cells, falling debris, absence of smoke and carbon monoxide detectors, absence of sprinkler systems, failure to post fire evacuation plans, toxic fumes, and overcrowding. (*Id.* at ¶ 66.) Plaintiff also alleges that Defendant Koschera, maintenance supervisor for EJSP failed to correct "dilapidated and deplorable conditions of confinement" at EJSP that existed at the time of Plaintiff's residency. (*Id.* at ¶ 71.)

In the statement of claims, Plaintiff reiterates that Defendant Nogan's removal of Plaintiff while Plaintiff was pursuing his First Amendment rights was an intentional act of retaliation designed to "segregate Plaintiff from his continued association with the group and serving

EJSP's population contrary to federal law." (*Id.* at ¶ 67.) Plaintiff alleges that the retaliatory transfer was also designed to create a "visit hardship" on Plaintiff, by moving him three hours from family and friends, including Plaintiff's eighty-six year old father. (*Id.* at ¶¶ 68.) Plaintiff further alleges that Defendant Nogan's refusal to ensure that staff responded to Plaintiff's grievances, as required under state regulation, and his rendering of the appeal process unavailable violated Plaintiff's right to due process under the Fourteenth Amendment. (*Id.* at ¶¶ 69.) Plaintiff further alleges that his transfer to EJSP without notice violated Plaintiff's due process rights under the Fourteenth Amendment and caused him to be unjustifiably searched and have his property seized, presumably at SWSP. (*Id.* at ¶ 69.)

Plaintiff alleges that Defendant Cirillo acted as an "accomplice" of Defendant Nogan by treating Plaintiff differently from other ILC members and subjecting him to harassment and ignoring the election results. Defendant Cirillo also temporarily appointed the losing challenger as wing representative and denied Plaintiff the opportunity to represent inmates who voted for him. (*Id.* at ¶ 70.)

Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages.

## III.   **STANDARD OF REVIEW**

Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915A.[3] "[T]he legal standard for dismissing a complaint for failure

---

[3] Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts

to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on

12(b)(6) motions."

## IV.   **ANALYSIS**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of

his or her constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory ... subjects,
> or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress ....

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the

challenged conduct was committed by (1) a person acting under color of state law and (2) that

the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws

of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other*

*grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 152 (1970); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). The Court

construes Plaintiff's Amended Complaint to raise a number of claims for relief under 42 U.S.C. §

1983 and the New Jersey Civil Rights Act ("NJCRA").[4]

---

to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which
relief may be granted, or seeks monetary relief from a defendant who is immune from such
relief.   "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28
U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal
Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012)
(citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x
230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F.
App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

[4] The Court also construes Plaintiff to raise civil rights claims under the NJCRA; because the
NJCRA is the state analog to § 1983, the Court analyzes Plaintiff's NJCRA claims together with
Plaintiff's § 1983 claims.

### a. Official Capacity Claims

Plaintiff seeks both damages and equitable relief and states in the Complaint that "Defendants are being sued in their "official capacities unless otherwise stated for acting under color of state law to deprive Plaintiff of his constitutional rights." (ECF No. 1, Complaint at ¶ 8.) "Personal-capacity damage suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v. Howard*, 353 F. App'x. 667, 672 (3d Cir. 2009). Accordingly, § 1983 claims for monetary damages against a state official in his official capacity are barred by the Eleventh Amendment. *See id.* State officials sued in their official capacities <u>do not</u> have Eleventh Amendment immunity when sued for prospective injunctive relief. *See Ex parte Young*, 209 U.S. 123 (1908). The Court also notes that the Eleventh Amendment does not bar suits against officials in their personal capacities, even if the actions that are the subject of the suit were part of the officials' governmental duties. *See Hafer v. Melo,* 502 U.S. 21, 30–31 (1991).

Here, Plaintiff has sued state officials for damages and injunctive relief. The Court will dismiss with prejudice the § 1983 and NJCRA claims for damages against Defendants in their official capacities. In light of Plaintiff's pro se status, the Court also construes Plaintiff to allege claims against Defendants in their personal capacities, and considers those claims below.

### b. Right to Grievance System

Plaintiff alleges that Defendants Lanigan and Nogan violated his civil rights by ignoring his grievances and by failing to follow the state law regulations governing the IRS. It is well-established, however, that prisoners do not have a constitutional right to an effective grievance process. Although, as discussed below, the filing of a grievance is a constitutionally protected activity, *see Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (noting that the filing of a grievance is protected by the First Amendment), access to an adequate grievance procedure is not a constitutional right. *See, e.g., Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("Prisoners do not have a constitutional right to prison grievance procedures."). "[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process [citation omitted], a prisoner cannot maintain a constitutional claim . . . based upon [the prisoner's] perception that [the recipient of the grievances] ignored and/or failed to properly investigate his grievances." *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011). Because Plaintiff has no constitutional right to a prison grievance procedure, his allegations regarding Defendants Lanigan and Nogan's alleged mismanagement of the grievance system at EJSP and the failure to answer his individual grievances fail to state a legally cognizable claim. The Court will dismiss with prejudice Plaintiff's § 1983 and NJCRA claims against Defendants Lanigan and Nogan to the extent they

are premised on the inadequacy of the grievance system at EJSP, the Defendants' failures to respond Plaintiff's grievances, and their failures to follow state regulations regarding the IRS.

### c.   First Amendment Retaliation and Related Conspiracy Claim

The Court also construes Plaintiff to allege a claim for First Amendment retaliation under § 1983 in connection with his filing of grievances, which is a constitutionally protected activity. *See Mitchell*, 318 F.3d at 530.  "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir.2000) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).  A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001) (quoting *Allah*, 229 F.3d at 225) (alteration in original).  With respect to the first element, a prisoner's submission of grievances is constitutionally protected conduct. *See Mitchell*, 318 F.3d at 530. The "adverse action" requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  Finally, a prisoner must show that the constitutionally protected conduct was 'a substantial or motivating factor' in

the decision to discipline him." *Rauser*, 241 F.3d at 333–34 (quoting *Mount Health Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this early stage, the Court finds that Plaintiff has stated a First Amendment retaliation claim under § 1983 and the NJCRA against Defendant Nogan in connection with this Defendant's alleged interference with Plaintiff's ILC activities and his transfer to EJSP.[5]

The Complaint, however, also alleges that Defendant Nogan conspired with Defendant Bonds to "plan, approve, and execute" the surreptitious transfer of Plaintiff from EJSP to SWSP in order to punish Plaintiff for exercising his constitutional right to file grievances, thus violating the First Amendment. (ECF No. 1, Complaint at ¶¶ 57, 61-62.) "[C]ivil conspiracy is [merely] a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights." *McGovern v. City of Jersey City*, 98-CV-5186 (JLL), 2006 WL 42236, at *9 (D.N.J. Jan. 6, 2006) (citing *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 832 n. 23 (D.N.J. 1993)). To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir.1993), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). Here, Plaintiff alleges in a conclusory manner Defendant Bonds, as Administrator of SWSP, participated in a conspiracy to retaliate against Plaintiff for his filing of grievances at EJSP. Other than the fact of Plaintiff's transfer to SWSP, Plaintiff has not provided any facts from which the Court could infer that Defendant Bonds and

---

[5] Although prisoners do <u>not</u> have a liberty interest in being assigned to the facility of their choice, *see Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976), Plaintiff may nevertheless state a retaliation claim under § 1983 if he was transferred in retaliation for his filing of grievances. *See, e.g.*, *DeFranco v. Wolfe*, 387 F. App'x. 147, 157 (3d Cir. 2010).

Defendant Nogan reached an agreement to deprive Plaintiff of his First Amendment rights. As such, the conspiracy claims under § 1983 and the NJCRA are dismissed without prejudice as to Defendants Nogan and Bonds.

### d. Supervisory Liability Claims

The Court will also dismiss without prejudice the supervisor liability claim as to Defendant Lanigan premised on Defendant Lanigan's knowledge of Defendant Nogan's alleged retaliation and his failure to enforce prison policies/regulations against retaliation. Plaintiff alleges that Defendant Lanigan, as Defendant Nogan's employer, had "notice" that Defendant Nogan was abusing his authority at EJSP, and failed to enforce the IRS policies to prevent retaliation against inmates for exercising their First Amendment rights.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, a section 1983 plaintiff must allege that each defendant was personally involved in the events constituting the plaintiff's claim. *See Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*").

In *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015), the Third Circuit outlined "two general ways" in which a supervisor-defendant may liable under § 1983: (1) where

the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation:

> [f]irst, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). "Failure to" claims – failure to train, failure to discipline, or, as in the case here, failure to supervise – are generally considered a subcategory of policy or practice liability.

*Id.*

With respect to the first type of claim, the Court in *Barkes* reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable on a § 1983 Eighth Amendment claim for implementing deficient policies. *See id.* (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). Under *Sample*,

> [t]o hold a supervisor liable for such an Eighth Amendment violation, the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

766 F.3d at 330. As explained by the Court in *Barkes*, "[t]he essence of the type of claim [the Court] approved in *Sample* is that a state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, has allowed to develop an environment where there is an unreasonable risk that a constitutional injury will occur, and

that such an injury does occur." 766 F.3d at 319-20.  Thus, deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff['s] or (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers–Capitol*, 256 F.3d at 136–37 (emphasis added) (citing *Sample*, 885 F.2d at 1099).

Plaintiff's claims against Defendant Lanigan implicate both types of supervisory liability. The Court will dismiss without prejudice Plaintiff's supervisory claims premised on Defendant Lanigan's failure to enforce prison policies/regulations against retaliation, as Plaintiff has not pleaded sufficient facts to show that Defendant Lanigan failed to respond to a pattern of injuries like Plaintiff's or that the risk of harm was obvious. [6] The Court will also dismiss the § 1983 claim against Defendant Lanigan premised on his knowledge of and acquiescence in a pattern or practice of constitutional violations.  *See Barkes*, 766 F.3d at 316-17.  "Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in ... the subordinate's conduct." *Bennett v. Washington*, No. CIV.A. 11-176, 2015 WL 731227, at *11 (E.D. Pa. Feb. 19, 2015) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 76–78 (2007)).  To sufficiently allege knowledge and acquiescence, a plaintiff must provide facts suggesting that the defendant supervisor "had contemporaneous, personal knowledge of [the alleged violation(s)] and acquiesced in it." *See Evancho v. Fisher*,

---

[6] As noted earlier, Defendant Lanigan's knowledge that grievances were being ignored cannot form the basis for a supervisory liability claim because there is no constitutional right to a grievance system.

423 F.3d 347, 353 (3d Cir. 2005) (explaining that a civil rights complaint "is adequate where it states the conduct, time, place, and persons responsible"). Here, Plaintiff's Complaint provides facts suggesting that he informed Defendant Lanigan about systemic problems with the grievance system and also wrote to Defendant Lanigan after his transfer to SWSP, but the Complaint does not provide sufficient facts to suggest that Defendant Lanigan had "contemporaneous personal knowledge" of Defendant Nogan retaliatory conduct and acquiesced to that misconduct. The allegations regarding Defendant Lanigan's notice of the offending conduct are conclusory at best and fail to state a claim for relief.

For these reasons, the supervisory liability claims against Defendant Lanigan under § 1983 and the NJCRA are dismissed without prejudice.

### e. Equal Protection Claim – Class of One

Plaintiff also appears to allege that his right to equal protection of the laws has been violated.[7] To state a claim under the Equal Protection Clause, plaintiff must allege that he is a member of a protected class and he was treated differently from similarly situated inmates. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (noting that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike"). If the litigant does not claim membership in a protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To sufficiently allege a "class of one" equal protection claim, Plaintiff must state facts showing that: "(1) the defendant treated him

---

[7] Plaintiff also states that his "federal LAD" rights have been violated. The Court construes Plaintiff to allege an equal protection violation under § 1983 and a civil rights claim under the NJCRA. To the extent Plaintiff seeks to assert additional federal claims, he must do so by way of an Amended Complaint and provide facts in support of that claim.

differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir.2006); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

Here, based on the allegations in the Complaint, Plaintiff has pleaded sufficient facts to state a "class of one" equal protection claim under § 1983 and the NJCRA against Defendant Nogan based on Defendant Nogan's alleged interference with Plaintiff's ILC activities and his refusal to permit allow Plaintiff to graduate from the NJSTEP program.[8]

The Court will dismiss without prejudice the equal protection claims under § 1983 and the NJCRA against Defendants Lanigan and Cirillo.  In his statement of claims, Plaintiff also alleges that Defendant Lanigan was "aware of the structural inequality existing at EJSP against Plaintiff being singled out and treated indifferently due to his race and association amongst others similarly situated, [and] opted not to correct such discriminatory behavior" (*Id.* at ¶ 59.) Assuming this is a claim for supervisory liability, the Court finds that Plaintiff has not pleaded sufficient facts to show how Plaintiff was treated differently due to his <u>race</u>, or how and when Defendant Lanigan was made aware of this alleged mistreatment.  Plaintiff further alleges that Defendant Cirillo acted as an "accomplice" of Defendant Nogan by treating Plaintiff differently from other ILC members and subjecting him to harassment and ignoring the election results. According to the Complaint, Defendant Cirillo temporarily appointed the losing challenger as wing representative and denied Plaintiff the opportunity to represent inmates who voted for him. (*Id.* at ¶ 70.)  Assuming the truth of Plaintiff's allegation that Defendant Cirillo ignored the

---

[8] The Court notes that Plaintiff has no freestanding constitutional right to be a member of the ILC or to graduate from the NJSTEP program; however, Plaintiff has alleged sufficient facts to suggest that Defendant Nogan treated him differently than similarly situated prisoners, that he did so intentionally, and that there was no rational basis for the difference in treatment.

election results and temporarily appointed the losing challenger as wing representative of the ILC, the Court nevertheless finds that Plaintiff fails to state a "class of one" equal protection claim against this Defendant, as Plaintiff has no constitutional right to be an elected member of the ILC, and his allegation that Defendant Cirillo harassed him is conclusory at best and does not suggest that this Defendant singled Plaintiff out for intentional and arbitrary discrimination.

### f. Denial of Visitation, Transfer without Notice, and Search and Seizure

Plaintiff further alleges that his transfer by Defendant Nogan was "purposely intended to create a visit hardship on Plaintiff, his family, and friends, by distancing him by three hours away" and thus preventing his friends and family from visiting him. In particular, the transfer limits the ability of Plaintiff's eighty-six year old father to visit him. (ECF No. 1, Complaint at ¶ 68.) Plaintiff also alleges that his transfer without notice violated his Fourteenth Amendment rights and that he was searched and seized upon his arrival at SWSP.

The Court will dismiss the Fourteenth Amendment and NJCRA claims premised on Plaintiff's transfer without notice, as it is well established that Prisoners do not have a liberty interest in being assigned to the facility of their choice. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). The Court will also dismiss the search and seizure claims under § 1983 and the NJCRA, as Plaintiff has not provided sufficient facts regarding the search and seizure.

The Court construes Plaintiff to allege that his retaliatory transfer violated his First Amendment right to intimate association and his Eighth Amendment right to be free from cruel and unusual punishment. To the extent that a "right" to visitation exists via the right to association, this entitlement is limited by prison officials' judgment in furthering penological goals. *See Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003). Although the Supreme Court

noted in *Overton*, that "freedom of association is among the rights least compatible with incarceration," it also declined to hold or imply "that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." 539 U.S. at 131; *see also Cordero v. Warren*, 612 F. App'x 650, 653 (3d Cir. 2015). The Supreme Court also stated in *Overton* that where "the withdrawal of all visitation privileges were permanent" or for a very long period, or if the withdrawal of visitation privileges "were applied in an arbitrary manner to a particular inmate," could also state a claim under the Eighth Amendment. 539 U.S. at 137.

Assuming Plaintiff has a First Amendment right to visitation with his family and friends, the Court finds that Plaintiff fails to state a claim for relief. Although Plaintiff alleges in a conclusory manner that Defendant Nogan "purposely intended to create a visit hardship" through the transfer, he has not provided any additional facts to suggest that Defendant Nogan transferred Plaintiff in order to deny him his right of association. The Complaint does not even suggest that Defendant Nogan knew where Plaintiff's family and friends lived and that they would not be able to visit him at SWSP. As such, the Court will dismiss without prejudice the First Amendment and NJCRA claims premised on Plaintiff's right of association. The Court likewise finds that Plaintiff fails to state an Eighth Amendment claim with respect to the denial of visitation, as he has not shown that Defendant Nogan denied him visitation on a permanent basis or arbitrarily denied him visitation.

### g. Condition of Confinement Claims

Plaintiff also alleges that Defendant Nogan violated the Eighth Amendment and acted with "deliberate indifference" to Plaintiff's and other inmates' welfare by "ignoring issues in the ILC agenda and their repeated complaints about numerous unsafe conditions on Plaintiff's unit.

18

These issues include unsafe drinking water, condemned cells, falling debris, absence of smoke and carbon monoxide detectors, absence of sprinkler systems, failure to post fire evacuation plans, toxic fumes, and overcrowding. (*Id.* at ¶ 66.) Plaintiff also alleges that Defendant Koschera, a maintenance supervisor in Plaintiff's unit, failed to correct "dilapidated and deplorable conditions of confinement" at EJSP that existed at the time of Plaintiff's residency.

"The Eighth Amendment's prohibition on 'cruel and unusual punishment' ... imposes on [prison officials] a duty to provide 'humane conditions of confinement.'" *Betts v. New Castle Youth Development*, 621 F.3d 249, 256 (3d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). That is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must "result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 835 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1982)).

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Counterman v. Warren County Corr. Fac.*, 176 Fed. Appx. 234, 238 (3d Cir. 2006). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." *Helling v. McKinney*, 509 U.S. at 32 (quoting *Rhodes*, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," a

state of mind equivalent to a reckless disregard of a known risk of harm. *See Farmer*, 511 U.S. at 835; *Wilson*, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions of confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes*, 452 U.S. at 347–48; *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir.1992). An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." *Ingalls v. Florio*, 968 F. Supp. 193, 198 (D.N.J. 1997); *see also Robinson v. Ricci*, No. CIV.A. 08-2023 PGS, 2012 WL 1067909, at *13 (D.N.J. Mar. 29, 2012) (explaining same).

As noted above, Plaintiff's allegations regarding Defendant Nogan's failure to respond to his grievances (or the ILC agenda) about unsafe prison conditions, standing alone, fails to state a claim for relief; however, Plaintiff's allegations that Defendant Nogan, as Administrator of EJSP, failed to correct numerous unsafe conditions on Plaintiff's unit after being apprised of those conditions states a claim for relief under the Eighth Amendment, and the Court will proceed the Eighth Amendment and NJCRA claims against Defendant Nogan related to the unsafe conditions.

The Court will dismiss without prejudice the Eighth Amendment and NJCRA claims against Defendant Ed Koschera, who is described as the maintenance supervisor of Lock Bag R at EJSP. Plaintiff alleges only that this Defendant failed in his "duty to eviscerate the dilapidated and deplorable conditions of confinement" that existed during Plaintiff's tenure at EJSP. The Court finds that this single allegation against Defendant Koschera is too conclusory to state a

20

claim for relief under the Eighth Amendment, as the Complaint does not allege that this Defendant had notice of any specific unsafe conditions or acted with deliberate indifference to the health and safety of Plaintiff.

### h. Motion to Consolidate Civil Action Nos. 17-672 and 17-679

In addition to his Complaint, Plaintiff has also filed a Motion to Consolidate this civil action with Civil Action No. 17-679, which is pending in the Camden Vicinage before the Honorable Noel L. Hillman.  With respect to consolidation, Federal Rule of Civil Procedure 42(a) provides that, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."  Plaintiff seeks to consolidate the actions because he alleges that "the majority of [his] witnesses are located in the northern region, including [his] 86 year old father."  Plaintiff further contends that "[t]his action derives from the northern venue" and consolidation of the two actions in the Newark Vicinage would eliminate a burden on his witnesses.  (ECF No. 17-672, at 1.)

The Court has considered the motion to consolidate and reviewed the Complaint in Civil Action No. 17-679 (Camden Complaint), and finds that the Camden Complaint appears to allege distinct claims for relief arising after Plaintiff's transfer to South Woods State Prison ("SWSP"). Although the Camden Complaint begins with Plaintiff's transfer from EJSP to SWSP, the allegations of misconduct at SWSP involve numerous additional Defendants and entirely different facts.  Indeed, the allegations in Civil Action No. 17-679 include, among other allegations, the loss or destruction of his property upon arrival at SWSP, his frustrated attempts to grieve the loss of said property, unauthorized deductions from his prison account, loss and/or

destruction of his mail, and a failed transfer attempt to Northern State Prison ("NSP"). These allegations do not appear to overlap in any significant way with the allegations in the instant action, as described above. Although Plaintiff alleges in Civil Action No. 17-679 that "the unconstitutional acts he suffered at SWSP . . . were retaliatory extensions of his federal civil rights being violated at EJSP[,]" (Civ. Act. No. 17-679, Complaint at ¶ 150), this allegation is utterly conclusory and fails to suggest that the two actions arise from common questions of law or fact. As such, the Court will deny without prejudice the motion to consolidate, and Plaintiff is free to pursue these claims in Civil Action No. 17-679.

## V.    CONCLUSION

As explained in this Opinion, Plaintiff's First Amendment retaliation claims, the equal protection "class of one" claims, and the Eighth Amendment claims related to unsafe conditions, along with the related NJCRA claims, shall proceed against Defendant Nogan at this time.[9] The remaining claims are dismissed as to all Defendants pursuant to the Court's screening authority under 28 U.S.C. 1915A. The official capacity claims for damages are dismissed with prejudice as to all Defendants. The remaining claims are dismissed without prejudice. The motion to consolidate is denied without prejudice for the reasons stated in this Opinion. An appropriate Order follows.

Madeline Cox Arleo, District Judge
United States District Court

---

[9] Because Plaintiff paid the filing fee and is not proceeding *in forma pauperis* ("IFP"), he is not entitled to service under 28 U.S.C. § 1915(d). In the Order accompanying this Opinion, the Court will direct the Clerk of the Court to send Plaintiff an IFP application. Should Plaintiff be unable to serve Defendant Nogan, he should complete the IFP application, including a certified six-month account statement, and a letter request for service.